**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220523-U

Order filed January 26, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| MOROUNKEJI AKIN-OLUGBEMI, | ) | Du Page County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-22-0523 |
| | ) | Circuit No. 19-D-644 |
| and | ) | |
| | ) | |
| TOLULOPE AKIN-OLUGBEMI, | ) | The Honorable |
| | ) | Linda E. Davenport |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Holdridge and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The trial court did not adequately notify an unrepresented party that participation in the pretrial conference would result in the waiver of his right to trial.

¶ 2    The mother, Petitioner Morounkeji Akin-Olugbemi, filed a complaint against the father, Respondent Tolulope Akin-Olugbemi, seeking a re-allocation of parenting time and child support. After holding a pretrial conference, the trial court entered orders on both matters. The father, who was not represented by counsel, appealed. We reverse and remand for additional proceedings.

## I. BACKGROUND

At the time the parties' marriage was dissolved on December 21, 2020, the trial court reserved any ruling on the issue of child support because "[t]he parties [were] equally sharing parenting time and based upon the income of the parties, child support is not warranted at this time." After the father moved to the United Kingdom in June 2021, however, the parties no longer shared equal parenting time. As a consequence, the mother filed a Petition to Set Child Support and For Other Relief in January 2022. Subsequently, both parties sought to modify the court's original allocation of parenting time. In March 2022, the trial court entered an agreed order temporarily requiring the father to pay $813 per month in child support for the parties' sole minor child, pending the final resolution of the mother's support petition.

On November 22, 2022, a hearing was scheduled to address the issues of child support and the re-allocation of parenting time, as well as other matters not at issue here. The father was self-represented at that hearing, while the mother was represented by counsel. After seeking to obtain the permission of the parties, the trial court conducted a pretrial conference on the issues of child support and parenting time. At the conclusion of that proceeding, the court modified the prior allocation of parenting time and ordered the father to pay $1,000 in monthly child support, retroactive to the entry of its prior support order. The retroactive nature of the new support order resulted in an arrearage of $4557. The father filed a timely notice of appeal.

## II. ANALYSIS

The father raises two issues on appeal: (1) whether the court's November 22 orders were against the manifest weight of the evidence; and (2) whether the court erred by failing to include certain business expenses claimed by the mother in calculating her income for purposes of establishing child support.

¶ 8 At the outset, we note that it is unclear precisely which of the trial court's November 22 multiple orders the father is challenging in his first issue on appeal. In its entirety, his argument asserts that:

> "The court order issued is against the manifest weight of the evidence because no exhibits were admitted into evidence, [he] had no opportunity to challenge documents presented by the [mother's] attorney during the pretrial conference because they were not admitted into evidence, there were no testimony was given [*sic*] under oath during the pretrial conference."

¶ 9 In this instance, we will overlook the paucity of citation and substantive argument to address the question of whether the father was adequately informed that he was waiving his right to trial and would be bound by the decision rendered by the trial court at the end of the pretrial conference. The record shows that, at the start of a previously scheduled hearing, the mother's counsel suggested that the court conduct a pretrial conference to expedite the resolution of the case. Agreeing with that suggestion, the trial court attempted to obtain the parties' permission to conduct the pretrial conference, stating,

> "Let me explain what that means. Sometimes we drop into lawyer speak. Let me tell you what that means. Although both of are you familiar with me and how I operate my courtroom after the [dissolution] trial that we went through, a pretrial conference is where we talk. It's going to be on the record. It's recorded. But people talk about why it's important, what you think needs to change and why. And then I'm going to listen to you both, and then I'm going to try to make a recommendation. Both of you or either of you are free to say no, no, no, I want my day in court, I want to be heard with evidence and

cross-examination; or you can say could we talk, and then you can step outside and try to speak.

> You need to understand, sir, [the mother's attorneys] are not your lawyers. They have no obligation to protect your interests, but they do have an obligation to talk and to listen. So what I'm going to do is, if it's acceptable to you, we're going to do this right out here sitting and listening, and you tell me why you filed and, ma'am, why you filed. You can allow your attorneys to do it if you want, but you can do it on your own. And then I'll tell you what my thoughts are based upon my history and my knowledge of the case as well as what you told me today.

> But I need to get permission to do that."

The court then asked the mother and the father whether they agreed to proceed with the pretrial conference, and both responded affirmatively.

¶ 10    Initially, we must examine the sufficiency of the trial court's explanation of the pretrial conference to determine whether it adequately informed the father, who was not represented by counsel, that his participation would act as a waiver of his right to a trial on the contested issues. Because that presents a legal question addressing the fundamental fairness of the proceeding, which implicates the father's due process rights, we review it *de novo*. *In re Bernice B.*, 352 Ill. App. 3d 167, 174–75 (2004).

¶ 11    In reviewing the language used by the trial court, we first note that the court never expressly informed the father that its decision at the end of the pretrial conference would be conclusive and that he would be barred from rejecting it and proceeding to trial. Indeed, the trial court couched its explanation of the outcome of the pretrial conference in language that strongly suggested that the pretrial conference would merely be a casual discussion and that its decision

4

would be nonbinding. As the court explained early on, "a pretrial conference is where we talk *** about why it's important, what you think needs to change and why." At the conclusion of that "talk," the court was then "going to try to make a recommendation." None of those statements suggests to a reasonable listener that the court's "recommendation" would, in fact, be a binding judgment.

¶ 12        Moreover, in the very next sentence, the court stated, "Both of you or either of you are *free to say no, no, no, I want my day in court*, I want to be heard with evidence and cross-examination." (Emphasis added.) The placement of that sentence immediately after the court's explanation that it would "try to make a recommendation" would lead a reasonable person to believe that either party could reject that "recommendation" and proceed to trial, where a full complement of evidentiary rules and cross-examination would apply. The trial court reinforced that idea further by concluding its explanation with the statement that the parties would "tell [the court] why you filed and, ma'am, why you filed. *** And then I'll tell you what my thoughts are." The court's expression of its "thoughts" is not equivalent to a binding judgment in common parlance and, necessarily, does not carry the same weight of authority. In our view, the father could have, and most likely did, conclude that, based on the court's explanation as a whole, he would have the option to reject the court's "thoughts" and "recommendation" at the conclusion of the pretrial conference and proceed to trial if he so chose.

¶ 13        After reviewing the trial court's explanation, we hold that the trial court failed to adequately inform the father that his participation in the pretrial conference would act as a waiver of his right to a full trial, with all its inherent procedural safeguards, and result in the entry of a binding judgment. Therefore, we reverse the orders re-allocating the parties' parenting time and establishing child support and remand the cause for further proceedings. Because of our

5

disposition of the notice issue, we need not address the merits of the father's remaining contentions on appeal.

¶ 14                                    III. CONCLUSION

¶ 15            For the reasons stated, we reverse the trial court's November 22, 2022, orders re-allocating parenting time and setting forth the father's child support obligation.

¶ 16            Reversed and remanded.